Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 01 C 689 | Date | July 31, 2001 |
| Case Title | Elizabeth Kort v Diversified Collection Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☒ Status hearing ☐ held ☐ continued to ☒ set for ☐ re-set for 9/6/01 at 9:00—
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
    ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)
(10) ☒ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss is denied. Defendant's answer to the complaint is due within 28 days.

(11) ☒ [For further detail see ☐ order on the reverse of ☒ order attached to the original minute order form.]

| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ☒ | Notices mailed by judge's staff. | FILED FOR DOCKETING AUG 0 2 2001 | date docketed | Document # |
| | Notified counsel by telephone. | 01 AUG -1 AM 11:05 | | |
| | Docketing to mail notices. | | docketing dpty. initials | 15 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate Judge. | | date mailed notice | |
| | courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH KORT, individually and on behalf )
of all others similarly situated, )
)
Plaintiff, )
) No.  01 C 0689
v. )
) Judge Robert W. Gettleman
DIVERSIFIED COLLECTION SERVICES, INC., )
a California corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Elizabeth Kort, filed a two-count putative class action complaint against defendant, Diversified Collection Services, Inc., alleging violations of the Fair Debt Collection Practices Act of 1977, 15 U.S.C. § 1692 et seq. ("FDCPA"). This court has jurisdiction over this claim under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper in this District because plaintiff resides, defendant transacts business, and the acts and transactions subject to this suit primarily occurred, in the Northern District of Illinois. Defendant has moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendant's motion is denied.

### Facts

For purposes of this motion to dismiss, the court accepts the factual allegations of the claim as true and draws all reasonable inferences in favor of plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Defendant is a collection agency that collects delinquent student loans for various creditors. In February of

1

2000, defendant sent a letter to plaintiff entitled, "NOTICE PRIOR TO WAGE WITHHOLDING," to collect a loan plaintiff allegedly owed to the Illinois Student Assistance Commission. The letter is dated February 5, 2000, and the envelope containing the letter is postmarked February 7, 2000.

The relevant portions of the letter read as follows:

You are given notice that Illinois Student Assistance Commission, pursuant to Federal Law (Public Law 102-164; 20 U.S.C. §1095a et seq.), will order your employer to immediately withhold money from your pay (a process known as "wage garnishment") for payment of your defaulted student loan(s), unless you take the action set forth in this Notice.

\* \* \*

You must establish a written repayment agreement with Diversified Collection Services (DCS) on or before March 6, 2000; otherwise, Illinois Student Assistance Commission will proceed to collect this debt through deductions from your pay. Unless you act by March 6, 2000, your employer will be ordered to deduct from your pay an amount equal to no more than 10% of your "disposable pay" for each pay period, or the amount permitted by 15 U.S.C. 1673 (unless you give Illinois Student Assistance Commission written consent to deduct a greater amount) to repay your student loan(s) held by your guarantor....

The letter then lists certain rights a borrower has regarding the collection. The letter states that plaintiff has the opportunity to avoid wage garnishment by "immediately remitting the balance in full or by entering into a written repayment agreement with DCS to establish a satisfactory schedule for the repayment" of the debt. It informs plaintiff that she has the right to object to the garnishment and has an opportunity to request a hearing on her objection. The letter further explains a borrower's right to an exemption if the borrower has been involuntarily separated from employment:

If you document that you have been involuntarily separated from employment, **Illinois Student Assistance Commission** will not garnish your wages until you have been re-employed continuously for twelve (12) months. If you wish to claim this exemption from wage garnishment, you will need to complete Part II of the enclosed Request for

2

Hearing form and send us written proof that you qualify for the exemption **by March 6, 2000**. Satisfactory "written proof" is the following: documents from the applicable Employment Commission (or a similar agency in another state) indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated. (Emphasis in original).

A form entitled "REQUEST FOR HEARING" is attached to the letter. Part I of the form allows the borrower to chose a written, in person, or telephonic hearing. Part II is entitled, "REASONS WHY YOU OBJECT TO GARNISHMENT" and states:

Check one or more reasons that apply. Explain any further facts concerning your objection(s) on a separate sheet of paper. You have the burden of proving any claims raised by your objection(s). The hearing on your objection(s) will be conducted based on the information on this form, any documentation you provide, and the documentation maintained by Illinois Student Assistance Commission. Please note that failure to provide written proof of your objection(s) may result in a hearing official issuing a decision to deny your objection as unsubstantiated.

The first choice provided, and most relevant to the instant claim, contains a box that may be checked and states, "I was involuntarily separated from employment and have not been reemployed continuously for twelve (12) months." It continues:

If you are covered under a state's unemployment program, you must submit this form along with documents from your state Employment Commission [or a similar agency in another state] indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Please note that failure to provide written proof may result in a decision by the hearing official to deny your objection.

Below this statement, the borrower is provided with a space to indicate his or her previous and present employers' names, addresses, telephone numbers and the date of separation and hire.

Plaintiff claims that the letter violates § 1692e and § 1692e(5) of the FDCPA. Specifically, plaintiff asserts that the letter threatens to garnish plaintiff's wages sooner than defendant is legally entitled to do so, and misrepresents the date by which she must act to avoid wage garnishment. In Count II, plaintiff claims that the portion of the letter discussing the criteria for possible exemption from wage garnishment violates § 1692e because it requires plaintiff to document or provide written proof of her eligibility for an exemption by a specific deadline even though she is not required to do so. In sum, plaintiff contends that as a result of the violations of the FDCPA, she is entitled to statutory damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1692k(a).

### Legal Standards

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the claimant's allegations entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 429-30. The purpose of a motion to dismiss is to test the sufficiency of the claim, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

### Discussion

Under the Higher Education Act ("HEA"), the Federal Family Educational Loan Programs, 20 U.S.C. § 1071 et seq., allow students to obtain low-interest loans from private lenders for tuition and education-related expenses to attend qualified educational institutions. State agencies as well as private non-profit institutions then guarantee these loans. Sibley v. Diversified Collection Services, Inc., 1998 WL 355492, at *1 (N.D. Tex.1997). If a borrower

4

defaults on a loan, the guaranty agency reimburses the private lender and takes title to the loan. In turn, the Department of Education reimburses the guaranty agency for the outstanding balance and may take title to the loan. Id. The guaranty agency must then diligently seek payment of the balance from the defaulted borrower and remit the money collected to the Department of Education. Id. Pursuant to § 1095a of the HEA, a guaranty agency may collect up to 10% of the "disposable pay" of certain defaulted borrowers to satisfy the outstanding balance.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Numerous provisions have been enacted in order to prevent abuse, such as prohibiting debt collectors from using any "misleading representation" in connection with collecting a debt, which includes threatening "to take any action that cannot legally be taken."[1] To determine whether a collection letter violates the FDCPA, the court evaluates the letter through the eyes of an "unsophisticated consumer." Gammon v. GC Services Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994) (rejecting the least sophisticated consumer test used by other courts and applying the unsophisticated consumer test to a § 1692g claim); see also Jang v. A.M. Miller & Assoc., 122 F.3d 480, 483 (7th Cir. 1997) (using the same standard for a § 1692e claim). The "unsophisticated consumer" standard protects consumers who are of below average sophistication or intelligence or are uninformed, naïve, or trusting. Gammon, 27 F.3d at 1257. However, the test includes an objective element of reasonableness to protect the debt collector from liability for "unrealistic or peculiar interpretations" of collection letters. Id.

---

[1]Specifically, § 1692e of the FDCPA states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section...(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

5

In Count I, plaintiff challenges the March 6, 2000, deadline provided in the collection letter. A guaranty agency is permitted to garnish up to 10% of the disposable pay of certain borrowers under § 1095a(a) of the HEA in order to collect the amount owed by the individuals. Section 1095a(2), however, requires that:

> [T]he individual shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings, from the guaranty agency or the Secretary, as appropriate, informing such individual of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual under this section.

Plaintiff argues that because the letter she received was postmarked February 7, 2000, "DCS's client may not legally issue a wage garnishment order" until at least 30 days have elapsed; in other words, after March 8, 2000. As a result, plaintiff contends that the letter is false, deceptive, and misleading in violation of § 1692e of the FDCPA because the March 6 date misrepresents the date by which plaintiff must act in order to avoid garnishment. Additionally, plaintiff claims that the letter violates § 1692e(5) of the FDCPA because it threatens to garnish plaintiff's wages before the agency is legally able to do so.

In response, defendant argues that plaintiff has failed to state a claim under the FDCPA because nowhere in the letter does it state that initiation proceedings for wage garnishment would occur earlier than March 8, 2000. Defendant asserts that the letter accurately describes the garnishment procedures contained in § 1095a of the HEA. According to the statute, the borrower must be given at least 30 days notice before wage garnishment could commence. Defendant argues that the letter simply states that plaintiff had to cure her default or establish a repayment plan by March 6, 2000, to avoid the garnishment proceedings. Because the statute does not grant borrowers a set period of time to avoid garnishment by curing the default or

6

establishing a repayment plan, defendant contends that the letter does not state, or misrepresent, any deadline. Therefore, defendant argues, the reference to arranging a payment plan or paying the balance in full by March 6, 2000, does not violate the FDCPA.

Although the letter defendant sent does not specifically state that wage garnishment proceedings would commence on any particular date, or would take place before the requisite 30 day notice period was complete, defendant inserted into the form letter a March 6 deadline by which plaintiff must take certain actions. Guaranty agencies are not required by statute to provide a specific deadline for establishment of a repayment plan, full remittance, or even the commencement of wage garnishment (30 days *notice* is all that is statutorily required). If, however, as here, a deadline is gratuitously established, it must not be misleading to the unsophisticated consumer. See e.g. Moore v. Fidelity Financial Services, Inc., 1997 WL 323822, at *3 (N.D.Ill.1997) (although not required to notify the creditor of any information beyond the time after which disposition will occur, notice purporting to explain plaintiff's right of redemption, which contained an incorrect statement of law, was misleading and erroneous).

In the instant case, the insertion of the March 6 date could lead an unsophisticated consumer to read the statement, "you are given notice that [ISAC]...will order your employer to immediately withhold money from your pay...unless you take the action set forth in this Notice," coupled with the statement, "[y]ou must establish a written repayment agreement with [DCS] on or before March 6, 2000; otherwise, [ISAC] will proceed to collect this debt through deductions from your pay," as indicating (or threatening) that wage garnishment could begin immediately following March 6, 2000. This inserted deadline could lead the unsophisticated consumer to believe that 28 days after receiving notice, garnishment of her wages could commence, which would be impermissible under the HEA.

7

Plaintiff's view of the ramifications of the inserted deadline is certainly one plausible reading of the letter. Indeed, reading the letter to indicate that garnishment of wages could commence 28 days after plaintiff received the notice appears to be the most logical conclusion to be drawn from the wording of the notice and the insertion of the March 6 date. Therefore, with the unsophisticated consumer standard in mind, and taking the allegations and reasonable inferences from the complaint as true for the purposes of this motion, the court concludes that the allegations contained in Count I are sufficient to state a claim upon which relief may be granted.

In Count II, plaintiff claims that the letter violates § 1692e because the letter states that she must provide written proof in order to qualify for an exemption to wage garnishment proceedings. Further, plaintiff contends that the letter imposes an allegedly false deadline by which she must prove her qualification for the exemption.

Although 20 U.S.C. § 1095a(a) permits a guaranty agency to collect a defaulted student loan by administrative garnishment of the defaulter's disposable pay, § 1095a(a)(7) of the HEA states:

> [I]f an individual has been reemployed within 12 months after having been involuntarily separated from employment, no amount may be deducted from the disposable pay of such individual until such individual has been reemployed continuously for at least 12 months.

The statute thus prohibits garnishment of the wages of a borrower who satisfies the above criteria. The language of the subsection is silent, however, as to how to ensure that those who qualify for this exemption avoid garnishment of their wages. In light of this statutory silence, and because the intent of Congress is unclear, the court looks to the Department of Education's interpretation of the HEA and determines whether it deserves deference. See Legal

8

Environmental Assistance Foundation v. United States Environmental Protection Agency, 118 F.3d 1467, 1474 (11th Cir. 1997) ("It is only after we have determined that words used by Congress are ambiguous, or that Congress left a gap in the statutory language, that we turn to the agency's interpretation of these words to ascertain whether it deserves any deference.").

The implementing regulation, 34 C.F.R. § 682.410(b)(10)(i)(G), states:

> The guaranty agency may not garnish the wages of a borrower whom it *knows* has been involuntarily separated from employment until the borrower has been reemployed continuously for at least 12 months. (Emphasis added).

The Department of Education's interpretation is consistent with the HEA, simply adding a knowledge requirement prohibiting garnishment if the guaranty agency knows that the borrower qualifies for the exemption provided in § 1095a(a)(7). This court finds that the agency's interpretation is entitled to deference because it is "based on a permissible construction of the statute." See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). Defendant contends that because the statute and regulation do not require a guaranty agency to perform an investigation, the only way the guaranty agencies will acquire this employment information is if the borrower provides it. Similarly, defendant argues that because the statute and implementing regulation are silent as to any time period during which a borrower may qualify for an exemption, imposing the March 6 deadline to supply proof of qualification does not misconstrue or misrepresent the provisions of the relevant regulations.

The fallacy of defendant's argument is that the Department of Education's interpretation of the statute does not require a borrower to prove that he or she is entitled to an exemption prior to wage garnishment. A borrower is not required by the regulation to do anything more than that which is necessary to impart "knowledge" upon the guaranty agency that he or she falls under §

9

1095a(a)(7). The letter sent to plaintiff, however, stated that to qualify for the exemption, plaintiff must provide written proof:

> Satisfactory "written proof" is the following: documents from the applicable Employment Commission (or a similar agency in another state) indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated.

Defendant notes that the form letter used in this case was taken word for word from a form the Department of Education approved for use in student loan garnishments. Defendant argues that because the Department of Education has been charged with enforcing the HEA, the court should defer to the agency's interpretation of the statute, including the form letter. While the court finds the Department of Education's interpretation of the HEA reasonable and permissible, and thus entitled to deference, the court finds that the requirements for qualifying for the exemption set forth in the form letter go beyond the agency's own interpretation of the statute. The regulation states that "knowledge" by the guaranty agency prohibits wage garnishment; it does not require written proof prior to garnishment.

Moreover, the type of documentation required here (e.g., written proof from a state agency) is likely to take substantial time to gather. Setting a March 6 deadline allows plaintiff only 28 days to gather all the requisite documentation to avoid wage garnishment. At this stage in the collection process, prior to any hearing, and under an imposed deadline to avoid wage garnishment, requiring extensive written proof is a more onerous burden than is required or contemplated by the HEA. Additional information, if needed, could be requested or provided at a subsequent hearing. Indeed, as the commentary in 59 Fed. Reg. 22462, 22474 (Apr. 29, 1994)

10

states, a borrower wishing to take advantage of the exemption may provide the requisite information "either before the garnishment proceedings are initiated, or during the hearing available to the borrower." There is simply no support for the burden imposed on borrowers by this letter.

Indeed, the form letter's requirement of written proof contradicts the Department of Education's commentary that "[t]he standardized notice fully explains the exception for involuntarily separated borrowers and includes a <u>simple</u> <u>form</u> for the borrower to fill out to request this exception." (Emphasis added).[2]

---

[2]The entire comment (59 Fed. Rec. 22474, § 682.410(b)(10)(i)(b) (April 29, 1994) states:

> 72. *Comment*: Some commenters were opposed to the qualified prohibition in the regulations that prevents a guaranty agency from garnishing the wages of a borrower whom it knows has been involuntarily separated from employment until the borrower has been reemployed continuously for at least 12 months. The commenters believed that the proposed regulations appear to condone garnishment as long as the guarantor is not aware that the borrower has been involuntarily separated from employment and has not been reemployed continuously for at least 12 months. They believed that the HEA does not permit garnishment under any circumstances until a borrower who has been involuntarily separated from employment has been reemployed.
>
> *Discussion*: The borrower will be informed of his or her rights with respect to wage garnishment in the notice sent to the borrower at least 30 days before the initiation of garnishment proceedings. The notice will include information about the exception provided for a borrower who has been involuntarily separated from employment.
>
> **Note**: All garnishments initiated by guaranty agencies on or after March 1, 1994 must comply with the standardized administrative wage garnishment procedures approved by the Secretary on February 1, 1994. As part of those standardized procedures, a guaranty agency must send a notice to the borrower prior to initiating garnishment. The standardized notice fully explains the exception f r involuntarily separated borrowers and includes a simple form for the borrower to fill out to request this exception.
>
> If a borrower who meets the conditions necessary for this exception wishes to take advantage of it, the borrower will be able to do so quite easily, either before the garnishment proceedings are initiated, or during the hearing available to the borrower. If
> (continued...)

11

Because the notice letter sent by defendant required plaintiff to submit extensive documentation within 28 days of receiving the letter to qualify for an exemption from wage garnishment, defendant may have misled plaintiff to believe that her rights under the HEA are more limited than provided by the statute. As such, the court finds that she has adequately stated a claim upon which relief may be granted under the FDCPA.

## Conclusion

The court denies defendant's motion to dismiss. Defendant is ordered to answer plaintiff's complaint within 28 days of this order. This matter is set for a report on status September 6, 2001, at 9:00 a.m.

ENTER:   July 31, 2001

Robert W. Gettleman
United States District Judge

---

²(...continued)
the borrower chooses not to divulge information concerning an involuntary separation, and there is not reasonable expectation that the guaranty agency should have known about the borrower's undisclosed involuntary separation, the Secretary believes that a resulting garnishment of the borrower's wages should not be invalidated if the borrower later contests the garnishment on those grounds or if the agency later learns that the borrower would have been eligible for the exception.