# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 689 | DATE | July 8, 2003 |
| CASE TITLE | Elizabeth Kort  v  Diversified Collection | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing set for 7/16/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Memorandum opinion and order entered. Accordingly, plaintiff's motion for summary judgment as to count I is granted and as to count II is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | JUL 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 62 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| GDS | courtroom deputy's initials | 03 JUL -8 PM 4:13 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH KORT, individually, and on behalf )
of all other similarly situated, )
)
Plaintiff, )
) No. 01 C 0689
v. )
) Judge Robert W. Gettleman
DIVERSIFIED COLLECTION SERVICES, INC., )
a California corporation, )
)
Defendant. )

DOCKETED
JUL 0 9 2003

## MEMORANDUM OPINION AND ORDER

In her class action complaint,[1] plaintiff Elizabeth Kort, individually and on behalf of all others similarly situated, alleges that Diversified Collection Services, Inc. ("DCS"), a California corporation, violated the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §§ 1692 et seq. In Count I, plaintiff alleges that DCS's "Notice Prior to Wage Withholding" letter violated the FDCPA by misstating the date by which plaintiff must enter into a repayment plan or pay off the loan to avoid administrative wage garnishment under the Higher Education Act, ("HEA"), 20 U.S.C. §§ 1071 et seq. In Count II, plaintiff alleges that DCS's letter violated the FDCPA by misstating the action a debtor must take under the HEA to claim an exemption from administrative wage garnishment for individuals who have been involuntarily separated from employment during the preceding twelve months. Plaintiff seeks declaratory relief, statutory damages, costs and reasonable attorneys' fees on both Counts. The court has certified a class as to each count. The parties have filed cross-motions for summary judgment under Fed. R. Civ. P.

---

[1]This court has previously granted certification to the classes alleged in both counts of the complaint.

56. For the reasons stated below, summary judgment is granted to plaintiff on Count I and to defendant on Count II.

## FACTS[2]

Defendant is a collection agency that collects delinquent student loans for various creditors. Defendant's operations include a student loan department that engages in a full range of collection services on behalf of defendant's clients, including telephone contact with borrowers to negotiate repayment arrangements and recommending to clients that accounts be put into administrative wage garnishment. When a client, either at defendant's suggestion or on its own initiative, requests that a defaulting borrower be subjected to wage garnishment, defendant's administrative wage garnishment department prints and mails a 30 day notice to the defaulting borrower indicating that garnishment will occur unless specified actions are taken.

On February 5, 2000, defendant printed a letter addressed to plaintiff entitled, "NOTICE PRIOR TO WAGE WITHHOLDING," to collect a loan to plaintiff by defendant's client, the Illinois Student Assistance Commission ("ISAC"). The envelope containing the letter is postmarked February 7, 2000. The relevant portion of the letter read as follows:

> You are given notice that Illinois Student Assistance Commission, pursuant to Federal Law (Public Law 102-164; 20 U.S.C. § 1095a et seq.), will order your employer to immediately withhold money from your pay (a process known as "wage garnishment") for payment of your defaulted student loan(s), unless you take the action set forth in this Notice.
>
> \*\*\*

---

[2]The following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

> You must establish a written repayment agreement with Diversified Collection Services (DCS) on or before March 6, 2000; otherwise, Illinois Student Assistance Commission will proceed to collect this debt through deductions from your pay. Unless you act by March 6, 2000, your employer will be ordered to deduct from your pay an amount equal to no more than 10% of your "disposable pay" for each pay period, or the amount permitted by 15 U.S.C. 1673 (unless you give Illinois Student Assistance Commission written consent to deduct a greater amount) to repay your student loan(s) held by your guarantor....

The letter then states that plaintiff has the opportunity to avoid wage garnishment by "immediately remitting the balance in full or by entering into a written repayment agreement with DCS to establish a satisfactory schedule for the repayment" of the debt. It informs plaintiff that she has a right to object to the garnishment and has an opportunity to request a hearing on her objection. The letter further explains a borrower's right to an exemption if the borrower has been involuntarily separated from employment:

> If you document that you have been involuntarily separated from employment, **Illinois Student Assistance Commission** will not garnish your wages until you have been re-employed continuously for twelve (12) months. If you wish to claim this exemption from wage garnishment, you will need to complete Part II of the enclosed Request for Hearing form and send us written proof that you qualify for the exemption by **March 6, 2000**. Satisfactory "written proof" is the following: documents from the applicable Employment Commission (or a similar agency in another state) indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Failure to provide written proof may result in your claim of exemption being rejected as unsubstantiated. (Emphasis in original).

A form entitled "REQUEST FOR HEARING" is attached to the letter. Part I of the form allows the borrower to choose a written, in person, or telephonic hearing. Part II is entitled, "REASONS WHY YOU OBJECT TO GARNISHMENT" and states:

> Check one or more reasons that apply. Explain any further facts concerning your objection(s) on a separate sheet of paper. You have the burden of proving any claims

3

raised by your objection(s). The hearing on your objection(s) will be conducted based on the information on this form, any documentation you provide, and the documentation maintained by Illinois Student Assistance Commission. Please note that failure to provide written proof of your objection(s) may result in a hearing official issuing a decision to deny your objection as unsubstantiated.

The first choice provided contains a box that may be checked and states, "I was involuntarily separated from employment and have not been re-employed continuously for twelve (12) months." It continues:

> If you are covered under a state's unemployment program, you must submit this form along with documents from your state Employment Commission [or a similar agency in another state] indicating your entitlement to unemployment compensation, and a statement from your present employer indicating the date you began work at your present job. If you are not covered under a state's unemployment program (even if involuntarily separated from employment), you must provide a statement to that effect from the state unemployment agency. Please note that failure to provide written proof may result in a decision by the hearing official to deny your objection.

Below this statement, the borrower is provided with a space to indicate his or her previous and present employers' names, addresses and telephone numbers and the date of separation and hire. The letter is identical to a form notice of administrative wage garnishment drafted in 1998 by the U.S. Department of Education ("DOE"). The DOE requires student loan guaranty agencies to use this form when seeking to garnish the wages of borrowers who have defaulted on a guaranteed student loan under the HEA's Federal Family Education Loan Program. Only the name of the borrower, guaranty agency and the dates vary with each instance of the form mailed. In the instant case, ISAC provided this form to DCS, which used it in its mailings to plaintiff and class members. Although the form letter is intended to give its recipient thirty days' notice of garnishment, both plaintiff and members of the sub-class referred to in

4

Count I were mailed letters postmarked less than thirty days before the date garnishment might begin as indicated in the letter.

Plaintiff claims that the letter violates § 1692e and § 1692e(5) of the FDCPA. Specifically, plaintiff asserts that the letter threatens to garnish plaintiff's wages sooner than defendant is legally entitled to do so, and misrepresents the date by which she must act to avoid wage garnishment. In Count II, plaintiff claims that the portion of the letter discussing the criteria for possible exemption from wage garnishment violates § 1692e because it requires plaintiff to document or provide written proof of her eligibility for an exemption by a specific deadline although she is not required to do so. Plaintiff contends that because of the violations of the FDCPA, she is entitled to statutory damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1692k(a).

Defendant asserts that the provisions of the HEA and the FDCPA are in conflict and cannot be harmonized. As the more specific statute, HEA controls and, therefore, loan servicers under the HEA are not statutory debt collectors under § 1692a of the FDCPA. Defendant also argues that as a company that merely prints, addresses and mails a collection letter authored by its client, it is not a statutory debt collector for FDCPA purposes. Defendant next asserts that the letter, whether mailed on the day printed or not, does not misstate plaintiff's and class members' rights under the FDCPA because, (1) the date by which the letter's recipient must act is not necessarily the date on which garnishment would begin, and (2) the proof requirement for the unemployment exemption in the letter cannot violate the HEA because it was authored by the DOE, which in doing so was giving its authoritative interpretation of the HEA as the administrative agency Congress empowered to administer the statute. Finally, even if DOE's

interpretation as expressed in the form is inaccurate, defendant asserts a bona fide error defense under § 1692k because reliance on the DOE's language was a procedure reasonably adapted to avoid unintentional error in defendant's use of language in such letters.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Admissible evidence must be evaluated in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### Count I

Defendant's argument as to Count I asserts that specific provisions of the HEA and the FDCPA conflict and cannot be harmonized. According to defendant, the HEA, as the more specific statute, controls, and the provisions of the FDCPA do not apply at all to student loan servicers like DCS. In particular, defendant notes that while the HEA regulations require a collection agency acting for a loan guarantor to send the borrower several written notices and to diligently attempt to contact the borrower by phone to demand repayment, 34 C.F.R. § 682.410(b)(5) and (6)(iii), the FDCPA requires debt collectors to terminate communications at the borrower's request. 15 U.S.C. § 1692c(c). Similarly, while the HEA requires a collection agency acting for a loan guarantor to make diligent attempts to trace a borrower whose location is unknown, 34 C.F.R. § 682.410(b)(6), the FDCPA limits contacts that a debt collector may make

6

with third parties, 15 U.S.C. § 1692b(3). Finally, while the HEA requires a contractor performing garnishment services on behalf of a loan guarantor to contact a debtor's employer to pursue administrative wage garnishment, 20 U.S.C. § 1095(a), the contractor's disclosure of a debt to an employer would constitute an impermissible third party communication under 15 U.S.C. § 1692c(b).

When two federal statutes appear to conflict, absent a clearly expressed Congressional intention to the contrary, it is the duty of the courts to harmonize them where possible. Morton v. Mancari, 417 U.S. 535, 551 (1974). None of the allegedly conflicting provisions defendant points to have been raised as issues in the instant case. There is no reason to assume that given the congressional policy of facilitating wage garnishment to defray the costs of defaulted guaranteed student loans, Congress also wished to see collection efforts proceed in a manner sufficiently abusive and unfair as to otherwise run afoul of the FDCPA. Therefore, while it may be appropriate for specific provisions of the HEA to qualify specific provisions of the FDCPA, where the HEA is silent, this court must assume the FDCPA has full effect because "the HEA does not trump or preempt the FDCPA." Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1267 (9th Cir. 1996, Fletcher, J., concurring and dissenting). This view has been expressly endorsed by the Secretary of Education. The Brannan court noted that the Secretary stated that while federal guaranteed student loan regulations preempt state law restrictions on pre-litigation collection activity, abusive and unfair collection of such debts is regulated by the FDCPA. Id. at 1262 (quoting 55 Fed. Reg. 40120, 40121 (1990)).

> In balancing the need for local regulation of collection activity on GSL obligations against the public need for efficient and effective collection activity, the Secretary took particular note of the existence of Federal law that regulated the conduct of these third

7

party collectors of defaulted student loans. These debt collectors were subject to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692-1692o, prior to the promulgation of these GSL regulations, and even under these preempting regulations, they remain subject to the FDCPA. Thus while the GSL regulations preempt inconsistent State laws regarding pre-litigation collection activity, significant Federal protection for GSL debtors remains under the FDCPA. Id.

The Secretary's statement led the Ninth Circuit to hold that private guaranty agencies attempting to collect guaranteed student loans are subject to the FDCPA. Id. at 1262. That same reasoning leads this court to hold that private guaranteed student loan debt collectors are subject to the FDCPA.

Next, relying on Laubach v. Arrow Service Bureau, Inc., 987 F.Supp. 625, (N.D. Ill. 1997), defendant argues that because its administrative wage garnishment department merely printed, addressed and mailed a collection letter at ISAC's behest, it is not a debt collector under § 1692a(6). Defendant's reliance on Laubach is misplaced. After reviewing the criteria used by other courts to determine whether a defendant is a debt collector, the court held that the defendant was not a debt collector because: (1) did not collect money from debtors; (2) did not include its own name and address in letters; (3) did not provide follow-up collection services such as telephoning debtors; (4) was paid on a per-copy rather than a contingency basis; and (5) had no direct relationship with debtor's creditors. Id. at 631. In the instant case, defendant attempts to liken the merely ministerial activities of its administrative wage department taken in isolation to the defendant in Laubach, although the record shows that defendant taken as a whole does collect money from debtors, includes its name in its letters, is paid on a contingency basis, and has a direct relationship with creditor clients. Defendant even recommends to creditor

8

clients that accounts it tracks be put into administrative wage garnishment. Defendant is, therefore, a debt collector under the FDCPA.

Defendant further argues that the letter in the instant case did not run afoul of the FDCPA in any event because nowhere in the letter does it state that initiation of proceedings for wage garnishment would occur on March 6, 2000, less than thirty days from the date the letter was postmarked. Thus, defendant argues that the letter accurately describes the garnishment procedures contained in § 1095a of the HEA. Defendant argues that the letter simply states that plaintiff had to cure her default or establish a repayment plan by March 6, 2000, to avoid garnishment proceedings. Because the statute does not grant borrowers a set period of time to avoid garnishment by curing the default or establishing a repayment plan, defendant contends that the letter does not state, or misrepresent, any deadline. Therefore, defendant argues, the reference to arranging a payment plan or paying the balance in full by March 6, 2000, does not violate the FDCPA.

Although the letter does not specifically state that wage garnishment proceedings would commence on any particular date, or would take place before the requisite 30 day notice period was complete, defendant's form letter sets a March 6 deadline by which plaintiff must take certain actions. Guaranty agencies are not required by statute to provide a specific deadline for establishing a repayment plan, full remittance, or even the commencement of wage garnishment (30 days notice is all that is statutorily required). If a deadline is gratuitously established, however, it must not be misleading to the unsophisticated consumer. See e.g. Moore v. Fidelity Financial Services, Inc., 1997 WL 323822, at *3 (N.D. Ill. 1997) (although not required to notify the debtor of any information beyond the time after which disposition will occur, notice

9

purporting to explain debtor's right of redemption, which contained an incorrect statement of law, was misleading and erroneous).

In the instant case, in denying defendant's motion to dismiss, this court has already held that the insertion of the March 6 date could lead an unsophisticated consumer to read the statement, "you are given notice that [ISAC] . . . will order your employer to immediately withhold money from your pay . . . unless you take the action set forth in this Notice," coupled with the statement, "[y]ou must establish a written repayment agreement with [DCS] on or before March 6, 2000; otherwise, [ISAC] will proceed to collect this debt through deductions from your pay," to believe that a wage garnishment could begin immediately following March 6, 2000. Kort v. Diversified Collection Services, Inc., 2001 WL 881449, at *5 (N.D. Ill. 2001).

In the Seventh Circuit, whether a collection letter would mislead an unsophisticated consumer is a question of fact and not law. Walker v. National Recovery, Inc., 200 F.3d 500 (7th Cir. 1999). Citing Walker, defendant asserts that because plaintiff has offered no evidence (such as a survey) beyond the text of the letter itself to indicate that the letter is misleading, plaintiff cannot prevail. Walker reversed the district court's dismissal of a complaint in which the district court found that a collection letter was not misleading as a matter of law, because "what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." Id. at 501 (quoting Johnson v. Revenue Management Corp., 169 F.3d 1057, 1060 (7th Cir. 1999) (reversing grant of motion to dismiss for failure to provide plaintiff with opportunity to develop factual record as to confusing effect of collection letter)). None of this precedent precludes a court from finding that a collection letter is in fact misleading on its face.

10

Indeed, other Seventh Circuit cases have affirmed summary judgment for the plaintiffs or granted judgment for the plaintiffs on the issue of confusion on the face of a collection letter without requiring additional evidence or a trial, and there is no indication that Walker was intended to overrule them. Bartlett v. Heibl, 128 F.3d 497, 501(7th Cir. 1997) (holding that extrinsic evidence a recipient was confused by collection letter is not required); Chauncey v. JDR Recovery Corp., 118 F.3d 516, 519 (7th Cir. 1997) (holding that collection letter was confusing on its face), Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996) (holding that student loan borrower in class action suit was not required to submit extrinsic evidence showing that debtor's class was misled by collection).

Other courts in this district have held that, absent an outright contradiction on the face of the letter, extrinsic evidence may be required to show that unsophisticated consumers are in fact misled. Chuway v. National Action Financial Services, Inc., 2003 WL 943949, at *4 (N.D. Ill. 2003). Reconciling controlling Seventh Circuit precedent discussed above, this court does not agree that only an outright contradiction can support summary judgment for plaintiff. In the instant case, the court finds that the text of the letter itself, not plaintiff's alleged misreading of it, presents on its face more than enough ambiguity to mislead an unsophisticated consumer. See Walker, 200 F.3d at 501. Therefore, with the unsophisticated consumer standard in mind, the court finds that the letter is misleading on its face because it would lead a consumer to believe that a wage garnishment could begin prior to the 30 day period required by § 1095a of the HEA. Accordingly, the court grants plaintiff's motion for summary judgment as to Count I and denies defendant's cross-motion.

### Count II

Defendant asserts a bona fide error defense as to Count II. 15 U.S.C. § 1692k allows a debt collector that violates any substantive provision of the FDCPA to avoid liability by proving by a preponderance of the evidence that, (1) the violation was unintentional, resulting from a bona fide error, and (2) that error occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Jenkins v. Heintz, 124 FF.3d 824, 828 (7th Cir. 1997) (citing 15 U.S.C. § 1692k(c)). Defendant argues that even if its form letter violates the FDCPA, defendant's reliance on DOE's presumptively authoritative interpretation of the HEA, as expressed in the form letter DOE required ISAC to instruct defendant to use, would be a bona fide error. Because the source of the form letter was not, ultimately, the client ISAC, but DOE, an administrative agency designated by Congress with the task of interpreting and implementing the HEA, reliance on such a form letter, given its provenance, was a procedure reasonably adapted to avoid error.

Plaintiff argues in response that adoption of defendant's argument would mean that any violation of the FDCPA would satisfy the conditions for the bona fide error defense. It is difficult to see why. Defendant has argued each element of the affirmative defense by reference to specific facts which would not be present in every putative FDCPA violation. For example, a deliberate attempt to violate the FDCPA could not satisfy the unintentional act element of the bona fide error defense. Similarly, reliance on a client-authored form letter in circumstances where the collector knew or should have known that the author was an unreliable source of interpretation of the law could not satisfy the reasonable procedures element of the bona fide error defense.

12

Finally, plaintiff argues that only factual or clerical error, not legal error, can serve as the basis for a bona fide error defense, and that in any event blind reliance on a creditor client's interpretation of the law cannot be considered a procedure reasonably adapted to avoid legal error. While courts are divided on whether the FDCPA bona fide error defense applies to mistakes of law, a growing minority of courts have concluded that mistakes of law can be considered bona fide errors. Nielsen v. Dickerson, 307 F.3d 623, 641 (7th Cir. 2002) (citing Johnson v. Riddle, 305 F.3d 1107, 1121-22 n.14 (10th Cir. 2002). The Seventh Circuit has not yet taken a position on the issue, although it has been willing to assume that the bona fide error defense was applicable to mistakes of law in cases in which that assumption was not outcome determinative because the bona fide error defense failed for another reason. Id. Other courts in this district have held that a mistake of law is insufficient to constitute a bona fide error, Farley v. Diversified Collection Services, Inc., 1999 WL 965496, at *9 (N.D. Ill. 1999). In Farley, the defendant relied on inaccurate legal advice. Id. In the instant case, defendant relied on the authoritative construction and procedures of the very administrative agency Congress empowered to implement the statute in question.

Because this court itself would have to "give substantial deference to an agency's interpretation of its own regulations," Brannan v. United Student Aid Funds, Inc., 94 F.3d at 1263 (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994)), it is difficult to imagine a procedure more reasonably adapted to avoid legal error than defendant's own deference to DOE in accepting ISAC's DOE-drafted form letter. Further, because this court has not reached the question of whether the form letter drafted by DOE was illegal under the FDCPA, it is not clear that the "error" here involved any mistake at all, let alone an unreasonable one. At least one

court has ruled that a bona fide error defense can succeed where the error consists of complying with the law at the time of the alleged FDCPA violation. Knight v. Schulman, 102 F.Supp.2d 867, 873-74 (S.D. Ohio 1999).

In the instant case, the undisputed evidence shows that the letters sent were identical to the form DOE required guarantors like ISAC to instruct their collection agencies to send. Thus, even if the DOE's language concerning the steps plaintiff and class members must take to receive the unemployment exemption falls afoul of the FDCPA, any such error by DCS would be inadvertent. Reliance on DOE's interpretation of the statute as expressed by its form letter would be a procedure reasonably adapted to avoid such error. Accordingly, plaintiff's motion for summary judgment as to Count II is denied and defendant's cross-motion for summary judgment as to Count II is granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to Count I is granted and as to Count II is denied. Defendant's cross-motion for summary judgment as to Count II is granted and as to Count I is denied. This matter is set for a status report on July 16, 2003, at 9:00 a.m., at which time the parties are directed to address the issue of damages on Count I.

**ENTER:** **July 8, 2003**

Robert W. Gettleman
United States District Judge

14